IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ADP DEALER SERVICES, INC. and, ADP COMMERCIAL LEASING, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> KERR CHEVROLET, INC., <br><br> Defendant. | 4:12CV3216 <br><br><br> ORDER |

This matter is before the Court on October 18, 2012, on the motion for a temporary restraining order (TRO) filed by plaintiff ADP Commercial Leasing, LLC ("ADPCL"). Filing 8. The Court has considered ADPCL's brief and index of evidence (filings 9 and 10), as well as the arguments and evidence submitted at the October 18 hearing held on ADPCL's motion. For the reasons discussed below, ADPCL's motion for a TRO will be denied, but without prejudice.

ADPCL and ADP Dealer Services work together to provide services, support, software licenses, and equipment to automobile dealers throughout the country. Filing 1 at ¶ 9. Kerr Chevrolet, Inc. ("Kerr") is a car dealership located in Hastings, Nebraska. Filing 1 at ¶ 3. On December 7, 2011, Dealer Services and Kerr entered into a "Master Services Agreement," under which Dealer Services agreed to license software to Kerr and provide certain equipment, services, and support. Filing 1 at ¶ 11; filing 1-1.

On December 20, 2011, Kerr and ADPCL entered into an Equipment Lease. Filing 9-1 at ¶ 2, pp. 3–5. ADPCL agreed to lease certain equipment, software, and peripherals that were used in conjunction with the software and services provided under the Master Services Agreement. Filing 1 at ¶ 14; filing 9-1 at 3–7. The Lease was to last 60 months and required monthly payments of $704.87. Filing 9-1 at 5.

Kerr's performance under the Lease is secured by a lien on all proceeds of any sale of a material portion of Kerr's assets outside of the ordinary course of business (an "Asset Sale"). Filing 9-1 at ¶ 4, p. 4. The Lease prohibits Kerr from conducting an Asset Sale without ADPCL's prior written consent. Filing 9-1 at 4. Specifically, the Lease provides that it shall constitute an "Event of Default" if

> Lessee [Kerr] shall sell, transfer and encumber a material portion of its assets out of the ordinary course of business and/or any ownership interest in Lessee (collectively "**Asset Sale**") without Lessor's written consent[.]

Filing 9-1 at 4. If an Event of Default occurs, the Lease grants ADPCL various remedies, including the right to accelerate all future lease payments then remaining. Filing 9-1 at 4.

If Kerr wishes to conduct an Asset Sale, it is required to provide ADPCL with written notice at least 30 days in advance. Filing 9-1 at 4. In addition to granting ADPCL a lien on any proceeds from any Asset Sale, Kerr has agreed not to make

> any payments, distributions or transfers of any kind of Asset Sale proceeds to a shareholder, member, partner, officer, director or employee, directly or indirectly, unless and until all obligations due and owing to [ADPCL] hereunder have been satisfied in full.

Filing 9-1 at 4.

On October 2, 2012, Kerr sold a material portion of its assets to Jerry Spady Pontiac-Cadillac, Inc. ("Spady") without notifying ADPCL and without ADPCL's consent. Filing 9-1 at ¶¶ 7–10; filing 9-2 at ¶ 2; filing 9-3 at 1–3. ADPCL did not learn of this sale until October 10, when ADP Dealer Services learned that Kerr's franchise with General Motors had been terminated. Filing 9-1 at ¶ 7; filing 9-2 at ¶ 2.

On October 10, 2012, Merri Grimes, an "Accounting Specialist" with ADP Dealer Services, spoke with Kerr's president, Jim Kerr. Filing 9-2 at ¶ 2. Jim Kerr explained that his dealership had been sold to Spady, and that he intended to give ADP Dealer Services 30 days' notice, and "that this was all he needed to do." Filing 9-2 at ¶ 2. According to Grimes, when she brought up the dealership's the other obligations under the Lease, Jim Kerr did not "offer to have his dealership pay the sums due upon termination" of the Lease. Filing 9-2 at ¶ 2.

ADPCL has also learned that Kerr is in the process of liquidating its used car inventory and winding up its business. Filing 9-1 at ¶ 8; filing 9-3. Kerr has yet to pay ADPCL any of the proceeds from the October 2 sale or car liquidation sale. Filing 9-1 at ¶ 10.

ADPCL's counsel informed Kerr that it is seeking a TRO and has emailed a copy of the relevant pleadings to Kerr's counsel. Filing 9-4. Kerr was informed that a hearing was scheduled for October 18, 2012, but Kerr elected not to appear at the hearing.

ADPCL seeks entry of a TRO directing Kerr to deliver to this Court all proceeds of any Asset Sales and any subsequent sales of its used car inventory. ADPCL requests the Court to hold these proceeds in trust until further order or until expiration of the TRO. If the TRO is not granted, ADPCL fears that Kerr may distribute the proceeds of the sales to its owners as part of its winding-up, placing the proceeds beyond ADPCL's reach. At the very least, ADPCL is concerned that this will hamper or delay satisfaction of any judgment against Kerr.

When deciding whether to issue a TRO, the Court turns to the four *Dataphase* factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). A TRO is an extraordinary remedy, and the movant bears the burden of establishing its propriety. *Roudachevski,* 648 F.3d at 705. At this time, ADPCL has not met that burden.

ADPCL  has demonstrated a sufficient probability of success on the merits, at least for the limited purpose of the present motion. ADPCL has shown that Kerr has, and likely still is, conducting Asset Sales without ADPCL's consent. And unless Kerr presents facts or law to the contrary, this amounts to a breach of the Equipment Lease, and an "Event of Default." But ADPCL has not demonstrated a realistic, non-speculative possibility of irreparable harm.

To show a threat of irreparable harm, the movant must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief. *Roudachevski,* 648 F.3d at 706. Stated differently, the irreparable harm alleged by the movant "'must be actual and not theoretical.'" *Brady v. Nat'l Football League,* 640 F.3d 785, 794 (8th Cir. 2011) (quoting *Packard Elevator v. ICC,* 782 F.2d 112, 115 (8th Cir. 1986)). There is no threat of irreparable harm where a party can be fully compensated for its injuries through an award of damages. *Gen. Motors. Corp. v. Harry Brown's, LLC,* 563 F.3d 312, 319 (8th Cir. 2009).

ADPCL argues that it faces a threat of irreparable harm because "the risk exists that Kerr will distribute the proceeds of the Asset Sales to its owners as part of its winding-up of its dealership." Filing 8 at ¶ 12. It is well established that district courts have the authority to issue a TRO to "ensure the preservation of an adequate remedy." *Airlines Reporting Corp. v. Barry,* 825 F.2d 1220, 1227 (8th Cir. 1987). But ADPCL must do more than offer unsubstantiated allegations that the defendant is about to dissipate assets.

A TRO will issue if the plaintiff can show there is a genuine risk the defendant will be insolvent before a final judgment can be entered. *Barry*, 825 F.2d at 1227 (collecting cases). In *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43 (1st Cir. 1986), the real possibility of irreparable harm was found where the record showed that the defendant was winding down after selling the bulk of its assets, using the proceeds to pay off creditors, had failed to provide adequate assurances that it could pay plaintiff's judgment, and could "at any time make itself judgment proof." *Id.* at 52–53.

ADPCL has not shown that Kerr is, or is soon likely to be, insolvent. Nor has there been any indication that Kerr would refuse to pay a judgment or attempt to conceal its assets. Instead, the evidence shows, at most, that Kerr is disputing its obligation to pay amounts due under the Equipment Lease.

ADPCL has not yet shown a genuine, non-speculative possibility of irreparable harm. The facts may change and this Court is not closing the courthouse doors. But, at this juncture, and on the evidence submitted, ADPCL's motion for a TRO is hereby denied, without prejudice.

IT IS SO ORDERED.


Dated this 18th day of October, 2012.

BY THE COURT:

John M. Gerrard
United States District Judge